The 4th District Appellate Court of the State of Illinois has now convened, the Honorable James A. Kinect presiding. This is our case number 420-0074, Prospect Bank v. Meyer, Meyer, Kahn, et al., and the Shriners Hospitals. Would the counsel for appellate please state your name for the record? Your Honor, Barry Hines, one of the counsel. You'll be joining us, Mr. Cates, yes, thank you. Counsel for appellate, please state your name. Your Honor, Erica Harold, on behalf of the Appellate Prospect Bank. Good morning, Your Honor, Tom Wilson, on behalf of the Shriners Hospitals for Children. Thank you. Appellate may proceed. Thank you, Your Honor. Your Honor, may it please the court, counsel, again, my name is Barry Hines, one of the attorneys for the appellants. The very essence of the appellant's case, Your Honors, is that the second codicil to the will of Mary Lou McGrew was not extrinsic evidence, but was part and parcel of her estate plan and was her final direction as to what to do with her property. The trial court, specifically in its findings and its order, found that the will was extrinsic evidence and could not be read to either create an ambiguity in a lease that was entered into two years after that second codicil or to amend the terms of the lease. That is our main issue on this appeal, is that the second codicil is part of her will. The will, there was a will and there was a first codicil which created the unit trust and a second codicil which has to have some meaning. It was directed towards the tenant and solely the tenant. It was a direction. It was not precatory language. The will said, I direct that the trustee continue the lease with Wayne Meyer, the tenant of the decedent. The language went on to specify that that lease continue on two conditions. As long as Wayne or one of his adult children were able and physically actively involved in the leasing arrangement and as long as they were following good agricultural practices. Our position is that that is the term of the lease, that the lease will continue subject to being terminated only if one of those conditions exist. As far as the life of Wayne, Wayne is deceased, but he has survived by six children, one of which Dan Meyer is the tenant. If Dan Meyer were to retire, one of his brothers or sisters could continue on as long as they were willing to be actively involved in the leasing of the farm. There is nothing in the second codicil which nullifies the unit trust in favor of Shriners Hospital. There is nothing that detracts from that unit trust. There is nothing that tries to amend the unit trust. The second codicil solely goes towards the asset that funds the trust. The asset is the farm that goes in the trust and held in the trust perpetuity. But the second codicil says that that farm is subject to a lease. And so in that respect, the asset may be diminished in part by the fact that there is a lease but it in no way abrogates the charitable gift. No way does it diminish it. At the same time, there is nothing in the second codicil that says that the gift to the Meyer family is in any way second to or inferior to or nullified by the gift to the Shriners Hospital of the unit trust. Very simply, your honor, we think that the trial court erred when they refused to put any weight on the second codicil. Mr. Hines, I have a question for you. I just want to make sure that we're not discussing something that has become moot. Has the farm been sold? No. Okay. And is Daniel Meyer still farming the ground? He is, your honor. Okay, thank you. What if the trustee wants to sell? I think the trustee can sell as long as the trustee sells subject to the lease to the Meyer family. There is nothing in the second codicil that says the trustee cannot sell. It's only what interest the trustee can sell in the farm. And he can sell the entire interest in the farm. It just must be sold subject to the Meyer lease. Mr. Hines, how is the lease relevant to the declaratory judgment? Do the pleadings establish that the lease or the terms of the lease are in controversy? I believe so, your honor, as to the term of the lease. Well, what part of the declaratory judgment complaint established that a controversy exists as to the lease provisions? Well, I think the fact that the... I'm thinking here for a moment, your honor. I think that the pleadings create the controversy. The plaintiff said that there is an actual controversy because the plaintiff wanted to sell free of the lease of the Meyers. And the pleadings say that no, you cannot sell free of the lease of Dan Meyer. Well, I think the pleadings do specifically reference a controversy as it relates to the probate documents. But I'm not sure in reading the pleadings that it establishes a controversy exists as to the terms of the lease. The court specifically found, I think in, I believe it was finding number eight, your honor, that the will, the codicil, excuse me, the second codicil did not amend or modify the lease insofar as the specific terms of the lease are concerned. And went on to say that Dan Meyer or no member of the Meyer family had a lifetime leasehold interest or for that matter, any leasehold interest other than just a year to year lease arrangement. Did the trial court go beyond the scope of the pleadings in making that finding? No. I don't believe they did go beyond the scope of the pleadings. I just think the basis for their ruling was incorrect. It should have, the will of the decedent includes not only her will, but both codicils and all of those parts have to be read and given equal weight. You must try to read the will in such a way that each one of those provisions have meaning and if you don't say that the Meyers have a lease or other than just a year to year basis, there's no meaning for the second codicil. They were at worst case, a year to year tenant. That's what the appellees want us to have them be. Even as a year to year tenant at the death of the testator, they could not be just kicked off immediately. They would have to be given a notice under the statute four months prior to the end of the lease year. So they would be able to finish the year, the crop year in question. But to read the second codicil the way appellees want us to read it and the way the trial court read it, there was no gift under the second codicil because there was no rights recognized by the court beyond the basic rights that the statute ensures every farmer in the state of Illinois, whether they have a lease or they don't have a lease. I think the decedent had an estate plan where she wanted to recognize both the Shriners and the Meyer family. She had gifts to both of those. Those gifts are not incompatible. Both of those gifts can stand on their own. The gift to the Meyer family takes nothing away from the unit trust. The gift to the Meyer family did specifically grant them the right to farm and it provided the two occasions when their farm lease would terminate. One, if they were no longer actively involved in the farming operation and two, if they failed to follow good farming practices. We believe that that should be recognized. That was the decedent's will. It should be honored. We request the court to reverse the judgment of the trial court and to enter judgment in If there are no other questions, we'll hear from your co-counsel or the other appellant. My co-counsel, Mr. Cade, is going to handle rebuttal, Your Honor. Oh, thank you. The appellee's then. Good morning, Your Honors. Tom Wilson on behalf of the Shriners Hospitals for Children. May it please the court and counsel. First, to address your question, Your Honor, directly as to the question of the lease. The lease in this case is an integrated, unambiguous document that is binding on the heirs and the successors. And I don't believe there's any dispute between the parties as to that fact. That if you read the terms of the lease, it clearly is a year-to-year lease that can be terminated by the trustee on four months' notice. The question is that the appellants are seeking to use something outside of the terms of the lease to change the term of the lease, that is, to alter the fact that it is a year-to-year lease, and that is the second codicil of the will. Before we get to the actual merits of the issue, there were two threshold issues that we raised on behalf of the Shriners Hospitals in our appellant brief. The first was the question of standing in this case, and that is the standing of a private party, the Meyer family, to essentially challenge the actions of the trustee. Now, certainly the trustees named them as a necessary party in the declaratory judgment, as they did the Attorney General's Office, but the Attorney General's Office filed an answer in this case in which they supported the position of the trustee, and they have not appealed or challenged the ruling. So under the Wilson case, which we cited to the court, we believe that there is a lack of standing of a private party in this case, that is, the Myers, to proceed with an appeal when the Attorney General or the state's attorney is not pursuing that position. The second issue that we raised was the question of forfeiture, and we certainly acknowledge that that is a limitation only on the parties and not the court, but when you review the parties' filings in the circuit court, and that's pages 157 to 165 of the record, and the oral argument before the circuit court, the argument below was that there were all of these facts and circumstances given the relationship between the testator and the Meyer family that were important to consider, and that the parties disagreed as to the interpretation of the lease, and therefore, there was a question of fact. The principal argument now advanced by the appellants is that there is this concept of incorporation by reference of a document into a will, and because the lease was not in existence in 1994 when the second codicil was drafted, it cannot be incorporated into the will itself. That particular issue was nowhere raised below in the trial court, and so we would suggest that was forfeited. Turning to the issue of the merits of the appeal in this case, if the court chooses to reach the merits based on the two issues that I've just mentioned, essentially what the court is being asked to do is to reconcile a integrated unambiguous lease that is binding on the parties from 1996 with this second codicil, and I would suggest that the way that that can be done is the roadmap that was laid out by the Duval court from the third district from 1988. It was a very similar circumstance in which the testator had a will that created a trust for the principal benefit of her husband. There was language in the will giving the trustee the unambiguous right to sell and to lease the property. There was also language in the will which specifically granted to the nephew of the testator the right to lease the property, and in fact, the language was expressly, and I'm quoting from the case, your honors, any of my farms in Illinois to be rented to my wife, and she survives me. What the court did in that case was found that if the language from the will with regard to leasing to the nephew was found to be mandatory, it would conflict with the unfettered right in the will itself to lease the property, and it would also diminish the primary purpose of the testator in setting up the trust for her husband. Similarly, in this case, we have the unfettered right within the document itself, that is paragraph 3B of the first codicil for the trustee to lease the property without restriction, and there is no dispute that the primary purpose of the testator's plan in this case was a charitable purpose to benefit my client, the Schreiner's Hospitals, for children. Therefore, if the court, as the Duval Court did, interprets the language in the second codicil as precatory, then the lease itself can be enforced as written, as it is an unambiguous integrated document, and the trustee in this case has honored the testator's wishes for the past 23 years until they reached the point where it became necessary to do something different with the property, given the rules that apply under the IRS code. So I will yield any remaining time I have to the co-appellee, Ms. Herold, unless the court has any questions for me. I see no questions. Thank you, Your Honor. Good morning. May it please the court. I'm Erica Herold, and I represent the Applee Prospect Bank, which serves as the successor trustee of the trust at issue in this case. In the same way that the lease is unambiguous, Mary Lou's will is similarly unambiguous, and to the extent that this court considers extrinsic evidence, Mary Lou's testamentary remainder unit trust for the benefit of the Shriners, not a lifetime lease for the Meyers. In the first codicil to her will, Mary Lou declared her intent to establish a charitable remainder unit trust in accordance with the Internal Revenue Code. Mary Lou provided that the farmland at issue here was to be held in such a trust, and that specified amounts of income were to be paid to her sister. Upon her sister's death, the will provided that the principal and income were to be held in the trust and used for the benefit of the Shriners. To the extent the Shriners cease to exist or no longer constituted a charitable organization in accordance with the code, the will provides that the trustee is to distribute that income to other qualified charitable organizations. Based on the will and the Internal Revenue Code, the Meyers cannot be a beneficiary of this charitable remainder unit trust. First, the Shriners still are in existence and constitute a charitable organization. Second, the Meyers do not constitute a charitable organization. Third, the will prohibits the trustee from exercising any power or discretion in a manner that would be inconsistent with the Internal Revenue Code's criteria and requirements for charitable remainder unit trusts. Treating a non-charitable individual as a charitable remainder beneficiary would be fundamentally inconsistent with these criteria and requirements. Treating the will as creating a long-term tenancy for the Meyers would harm the Shriners in two fundamental ways. First, if the trustee must continue leasing the farmland to the Meyers, then the trust's favorable tax position could be jeopardized. Pursuant to section 4942 of the Internal Revenue Code, the trust will be subject to an excise tax on its undistributed income if it fails to make annual distributions to the Shriners of an amount that's equal to at least 5% of the fair market value of the trust property. Counsel, I have a question about that. Was there undistributed income which would have been subject to the excise tax? Because it was my understanding that whatever profits that the land generated from farming would have been turned over to the Shriners. There have been, the trust has not been subject to excise taxes at this point, but in the past there have been years in which the trust income has not equaled 5% of the farmland's fair market value, and so the trustee was able to use liquid assets on hand to be able to make up that shortfall, but the current- My question is, was there any undistributed income? I frankly don't see how there ever could be. There has not been undistributed income in terms of not making the required distributions to the Shriners because we have to make at least 5%, but there will come a point in time in the future where the trustee or the trust will not have sufficient liquid assets to make the requisite distributions to the Shriners. I understand that, but there still would not be an excise tax unless there's undistributed income, and there isn't going to be. But anyway, go ahead. If I understand Your Honor's question, there would be undistributed income in terms of not being able to make the actual distribution, and the farmland itself will still exist, and so there will be a circumstance in which there will be excise taxes because the liquidity position of the trust itself will not be able to enable the trustee to make that requisite distribution. Okay. The trustee is required to maintain the favorable tax position for the trust, and so continuing to lease the farmland to the Myers in a way that potentially jeopardizes that would harm the charitable beneficiary, which is the Shriners. Furthermore, if the trustee sells the farmland but is compelled to do so subject to a long-term leasehold interest, then the Shriners still would be harmed because there's no dispute that the price for which it could be sold would be substantially diminished. This would then substantially decrease the trust principle, and therefore the amount of income that could be distributed to the Shriners. An interpretation of the will that results in unnecessary depletion of the trust assets or undermines the interest of the trust's sole beneficiary would be untenable. The interpretation of the will that best reflects Mary Lou's overall dispositive intent is interpreting the language regarding leasing to the Myers as being precatory and therefore nonbinding. I agree with co-counsel that the finding in Duval versus LaSalle National Bank is instructive here, and the circumstances are analogous, and we believe the court's opinion should be followed here. A testator's language must be viewed in light of the overall dispositive plan as reflected in the testamentary instrument. Mary Lou's overall dispositive plan, as evidenced by the type of trust she created and the words of the will itself, was the creation of a charitable remainder unit trust for the benefit of the Shriners, not the preservation of a lifetime tenancy for the Myers. However, we maintain that the court need not reach the issue of evaluating extrinsic evidence as the farm lease's plain language unambiguously provides for a year-to-year tenancy. It contains an integration clause. Indeed, the Myers do not contend that this lease is in any way ambiguous. The second codicil, therefore, is extrinsic evidence that cannot be used to either create an ambiguity or alter the lease's unambiguous year-to-year tenancy. Accordingly, Prospect Bank would respectfully request that this court affirm the circuit court's holding of Judgment and Prospect Bank's favor. I have a question. What prompted the filing of the declaratory judgment action? The filing was prompted by the fact that the trustee intended to sell at least part of the land and therefore wanted to terminate the year-to-year lease that existed with Dan went to Mr. Meyer. Mr. Meyer said, well, I believe I have a lifetime tenancy based on this will. And as a result, the declaratory judgment complaint was filed to be able to seek a declaration because the trustee did not want to put land on the market with this sort of an issue hanging out there because it would obviously undermine the ability to sell for full market value. Thank you. No other questions? We'll hear from the appellant and rebuttal. Our counsel, Matthew Kate, on behalf of the appellant in response, your honor's last comment hit on the very essence of this. The Shriners and Prospect Bank know that they can sell. They know they can sell right now. They simply want to achieve a greater value. They want to have their cake, eat it too. And the cherry on top. They want all of it. What they don't want to do is follow the testators wishes, desires, and the intent. This court has a long history with supporting the intent of testators. And you have that ability right now in reading and giving meaning to the second counsel. The very essence of what has happened is we've talked and we just heard the two harms to the Shriners. That first harm being that allegedly there could be a tax consequence. Well, the testator was aware of that or aware enough that she created not only a gift over in the trust to the Shriners, but also, pursuant to her second counsel, a gift to her longtime farm tenant. What the Shriners and both Prospect Bank wish for this court to do is only have that gift over to the Shriners and abrogate or completely ignore that benefit and that gift over to her longtime farm tenant. And this court should not support simply because there could be a tax consequence. That happens. There can be tax consequences, potentially, but that does not give a reason or a basis than to abrogate this testator's wishes. And the second we heard from was, well, we want to be able to sell your honors, but we sure don't want to have to get stuck with Dan Meyer's lease. Your honors, that happens all the time. Farm ground is sold, as your honors are aware, for having to deal with central Illinois issues. Farm ground is sold all the time, subject to the rights of a tenant currently in possession. They'll be under a year lease, maybe a few more years of a lease. In this case, it happens to be a lifetime lease. That's simply what they have. The Shriners should be thankful for what the testator left them, but they're apparently not. They want more. They aren't happy with just simply receiving the income and what the testator gave them and the gift from her bounty. They want even more. Unfortunately, I didn't go in the correct direction and simply didn't even really look at the second codicil. As we saw from its ruling of paragraph eight, just simply no meaning. That cannot be the fourth district's position. I don't believe it would be the fourth district's position who has a long support for looking and finding what the testator's intent. This isn't a difficult game to find what her intent is. Her intent was to benefit her longtime farm tenant, but also then that gift over eventually into the trust of the income of that. Your honors, I think the decision in this area is clear. The ability of this court to correct the wrong and give value and give meaning to the testator's wishes can be done here. I thank the court. I'd be happy to answer any of the questions of the court. Otherwise, I very much appreciate everyone's time and the ability to handle this even in these times by Zoom and the means that you've allowed us to. Thank you, counsel. I see no questions. We'll take the matter under advisement and rule accordingly.